UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHARLENE PARKER** | **CIVIL ACTION** |
| **VERSUS** | |
| **STATE OF LOUISIANA DEPARTMENT OF EDUCATION SPECIAL SCHOOL DISTRICT** | **NO. 07-369-C-M2** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, January 9, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SHARLENE PARKER | CIVIL ACTION |
| VERSUS | |
| STATE OF LOUISIANA DEPARTMENT OF EDUCATION SPECIAL SCHOOL DISTRICT | NO. 07-369-C-M2 |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion to Dismiss Amended Complaint, or in the Alternative, Motion for More Definite Statement (R. Doc. 15) filed by defendant, the Louisiana Department of Education, Special School District ("the DOE"). Plaintiff, Sharlene Parker ("Parker"), has filed an opposition to this motion (R. Doc. 22), wherein she contends that the DOE's motion should be denied as moot.

## FACTS & PROCEDURAL BACKGROUND

In the original complaint (R. Doc. 1) filed in this matter on May 28, 2007, Parker alleges that this is a "civil action arising under the laws of the United States, particularly 42 USC 2000e, et seq." She further alleges that she is an African-American who was employed by the DOE from November 8, 2004 through June 23, 2006, as a special education teacher at Dixon Correctional Institute. She avers in a conclusory fashion that the DOE "created a hostile work environment based upon [her] race" and "fired [her] unlawfully based upon her race." As a result of the DOE's alleged actions, Parker contends that she suffered damages, including lost income and benefits, emotional distress, humiliation, mental anguish, anxiety, and other damages. She also seeks punitive damages and attorney's fees.

In response to Parker's original complaint, the DOE filed a Motion to Dismiss, or in

1

the Alternative, Motion for More Definite Statement (R. Doc. 8) on June 21, 2007. The next day, Parker filed an Amended Complaint (R. Doc. 10), wherein she alleged the following facts: On February 20, 2006, Parker and one of her African-American co-workers met with Parker's immediate supervisor, Roger James ("James"), and another of her supervisors, Ms. Leblanc ("Leblanc"), both of whom are white, to question them about preferential treatment that a white co-employee had been receiving. Specifically, Parker and her co-worker complained that they were expected to complete work that was assigned to the white employee and that they were required to "walk through a line-up of prisoners," which the white employee was not required to do. Parker contents that her superviors became "upset" during that meeting and told Parker's co-worker to "shut up."

Parker also alleges that, on March 20, 2006, she met with James and Leblanc again and was told at that time that she would have to move her classroom to another building, where the classroom would be shared by both regular education inmates and Parker's special education inmates. Parker contends that she tried to question James about the legality of special education students being housed with regular education students and asked him to put in writing his instruction about moving classrooms. She asserts that Leblanc "kept interrupting" her during that meeting to advise that he felt she was "being insubordinate" by asking her questions. Parker asked James to meet with her privately, but he refused.

On March 21, 2006, Parker allegedly reported for work but then left in order to attend a scheduled training class. Upon returning to work on March 22, 2006, Parker found that her materials had been moved to Leblanc's office, and security personnel told her that she was not allowed into the office unless Leblanc was present. Parker contends that she was

therefore unable to get to her materials to complete a lesson plan that James expected to receive on March 24, 2006. Although Parker sent James a request for an extension, explaining why she could not timely complete the lesson plan, James refused to accept that request because it was not faxed from Leblanc's fax machine in accordance with a prior directive of James.

Finally, Parker contends that, following a meeting in Leblanc's office on March 31, 2006, she inadvertently left her security beeper, which had been issued to her by the facility, on Leblanc's desk. According to Parker, in her experience, whenever a beeper is found, security personnel simply return it to the teacher. However, she alleges that, when security personnel advised Leblanc that the beeper belonged to Parker, Leblanc said she "would take care of it." Later, the security guard claimed to have found the beeper in the "teacher's planning area," to which inmates have access and which is right next to Leblanc's office. The security guard "wrote Parker up" for the beeper incident and banned her from the facility. Parker was then placed on leave from April 4, 2006 through June 23, 2006, at which time she was terminated.

In ruling on the motion to dismiss, the Court found that the allegations in Parker's original complaint failed to comply with the notice pleading standards set forth in the Federal Rules, however, the Court determined that the allegations in her supplemental complaint were sufficient to put the DOC on fair notice regarding the claims against it, in that Parker identified the supervisors that allegedly discriminated/retaliated against her and set forth the underlying facts concerning the instances of discrimination/retaliation and the facts surrounding her termination. *See*, Report and Recommendation dated August 23, 2007 (R. Doc. 21) and the district judge's Ruling adopting Report and Recommendation

3

dated September 18, 2007 (R. Doc. 23). The DOE has now filed another Motion to Dismiss, or in the Alternative, Motion for More Definite Statement, wherein it again contends that Parker's case should be dismissed because she has failed to allege specific facts which support the elements of her claims.

## LAW & ANALYSIS

As the Court determined in its Report and Recommendation on the DOE's first motion to dismiss, while Parker did not specifically cite Title VII of the Civil Rights Act of 1964 as the legal basis for her claims in her original complaint, it is apparent that she is seeking relief pursuant to that statute since she has alleged employment discrimination and retaliation claims and seeks relief under Title VII's amendment, 42 U.S.C. 2000e, *et seq*. Thus, the Court must review the sufficiency of the allegations in Parker's amended complaint under the rules applicable to Title VII cases, which have been recognized to be the same as the ordinary rules of assessing the sufficiency of a complaint under the Federal Rules. *Swierkiewica v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992 (2002)(The Supreme Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. A Title VII complaint does not require greater "particularity" than other complaints filed under the notice pleading system). As noted previously, the Court's task is a limited one, and the issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his or her claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Under the ordinary rules of notice pleading, specifically, Fed. R. Civ. P. 8(a)(2), a complaint must only include a "short and plain statement of the claim showing that the pleader is entitled to relief," and such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, at 512, quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. *Id.*[1] If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move to dismiss the case pursuant to Rule 12(b)(6) or for a more definite statement under Rule 12(e). *Id.*

When a Rule 12(b)(6) motion has been filed, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)(per curiam)(citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)). "[T]he court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Id.* (citing *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996)). Finally, "[d]ismissal is proper if the complaint *lacks an allegation regarding a required element* necessary to obtain relief . . ." *Rios v. City*

---

[1] Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake.

Other provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard. Rule 8(e)(1) states that "[n]o technical forms of pleading or motions are required," and Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." *Id.*, at 512-514.

5

*of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006)(Emphasis added)(quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)).

     As discussed above, Parker alleges in her original complaint that the DOE's actions, through James and Leblanc, "created a hostile work environment based upon [her] race" and that she was terminated "in retaliation for complaints about preferential treatment given to a white employee." Accordingly, it appears that she is alleging a hostile work environment claim and a retaliatory discharge claim under Title VII. The issue before the Court, based upon the DOE's renewed motion to dismiss, is whether Parker has sufficiently alleged facts relating to all of the requisite elements of those two claims, such that those claims should not be dismissed or a more definite statement of facts made.

     To state a hostile work environment claim under Title VII, a plaintiff must show: (1) that he or she belongs to a protected group; (2) that he or she was subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristic; and (4) that the harassment affected a term, condition, or privilege of employment. *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). The U.S. Supreme Court has emphasized that Title VII's prohibition in hostile work environment cases is "not limited to 'economic' or 'tangible' discrimination." *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007), quoting *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Rather, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.*, quoting *Harris Forklift Sys.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). For harassment to be sufficiently severe or pervasive

to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. *Id.* Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. *Id.* To determine whether the victim's work environment was objectively offensive, courts consider the "totality of the circumstances," including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Id.*

    In the present case, Parker certainly alleges that she is a member of a protected class as an African-American and that the harassment she experienced was "because of her race." Thus, she has properly alleged prima facie elements (1) and (3) of her hostile work environment claim. The issue therefore becomes whether she has sufficiently alleged "unwelcome harassment" that affected a term, condition, or privilege of her employment. As discussed above, Parker alleges a hostile work environment based upon the fact that she and an African American co-worker were assigned to complete work tasks for a Caucasian employee; that they were forced to walk through a prisoner line-up, while the Caucasian employee was not; that she was told she was being "insubordinate" when she complained about preferential treatment of the white employee; that her teaching materials were moved to her supervisor's office, such that she could not get to them to complete a lesson plan assignment; and that she was placed on administrative leave and ultimately fired when she inadvertently left her beeper in her supervisor's office, while other beepers which were found were simply returned to their owners. Those allegations indicate that, at the least, a "condition" of Parker's employment was impacted by the alleged actions of

her supervisors, in that she had to assume additional work tasks, was required to engage in conduct not required of white employees, and was unable to complete a work assignment due to her materials being moved into her supervisor's office to which she could not gain access without his being present.

Thus, the remaining issue is whether the alleged actions taken by Parker's supervisors were sufficiently severe or pervasive to constitute "unwelcome harassment" for purposes of an actionable Title VII hostile work environment claim. Without discovery being conducted as to the specific facts surrounding each of the alleged forms of harassment, the Court cannot say definitively that Parker will be unable to sustain a cause of action on her hostile work environment claim. For example, the Court is entitled to additional information regarding the type, amount, and difficulty of the work tasks Parker was required to complete for the Caucasian employee; the frequency of and circumstances surrounding the prisoner line-up issue, and whether any other employee had ever been placed on administrative leave based upon a security beeper incident. In other words, considering that the Court is required to accept the plaintiff's allegations as true relative to the present motion, the Court finds that Parker has alleged enough to get past the hurdle of a Rule 12(b)(6) motion, and if her claim is indeed unmeritorious, as the DOE contends, such an argument would be more appropriately raised after some discovery is completed and through the use of a summary judgment motion. See, Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)(The simplified notice pleading standard relies on liberal

discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims).[2]

To survive the present motion to dismiss relative to her retaliatory discharge claim, Parker must allege facts regarding the following elements:  (1) that she engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link exists between the protected activity and the adverse employment action. *Washburn v. Harvey*, 504 F.3d 505 (5th Cir. 2007); *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995).  Parker certainly alleges that she experienced an adverse employment action, in that she was terminated by the DOE.  The "protected activity" for which she alleges she was terminated was the making of "complaints [to her supervisors] about preferential treatment given to a white employee."  While the DOE contends that internal complaints and grievances, in and of themselves, are not activity protected from retaliation under Title VII, the Court cannot completely agree with that generalized statement.  The Fifth Circuit, in *Harris-Childs v. Medco Health Solutions, Inc.*, recognized that an internal complaint to management regarding harassment can be considered "protected activity" for purposes of

---

[2] In its present motion, the DOE contends that Parker's case should be dismissed because the assignment of increased tasks/unfavorable chores and a supervisor's reprimands and commentary to an employee, by themselves, have been held insufficient to support a discrimination claim because such actions do not constitute "ultimate employment decisions" or "adverse employment actions" for purposes of Title VII.  The problem with the DOE's argument is that an "ultimate employment decision" or an "adverse employment action" is not necessarily required to satisfy the prima facie elements of a claim for hostile work environment discrimination.  *See, Clark v. Bally's Tunica, Inc.*, 2002 WL 971602 (5th Cir. 2002)("As [the defendant] did not take any adverse employment action against [the plaintiff], her complaint must be treated as a hostile work environment claim").  The issue before the Court on a hostile work environment claim is whether all of the alleged actions of Parker's supervisors, taken together, were "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Further information regarding Parker's allegations of harassment, to be ascertained through discovery, is needed for the Court to make that determination.  Finally, it should be noted that all of the cases that the DOE cites in support of its arguments that Parker's hostile work environment claim should be dismissed relate to determinations made at the summary judgment stage after discovery has been conducted relative to the incidents of alleged harassment, as opposed to this case, where all the Court has before it is Parker's allegations that are to be accepted as true.

a Title VII retaliation claim where the plaintiff alleges that she "complained of racial or sexual harassment" during that complaint. *Harris-Childs v. Medco Health Solutions, Inc.*, 2006 WL 616022 (5th Cir. 2006)(where the plaintiff failed to demonstrate that she engaged in protected activity because, in her complaints to management, she never mentioned that she felt she was "being treated unfairly due to her race or sex"); *See also, Bicknell v. City of St. Petersburg*, 2006 WL 560167 (M.D. Fla. 2006)(Complaints or grievances made *in the absence of some allegation of conduct proscribed by Title VII* do not constitute statutorily protected activity). Based upon Parker's allegation that her internal complaints to her supervisors related to preferential treatment for a *white* employee, the Court finds that she has sufficiently alleged that her complaints related to "being treated unfairly due to her race," such that she has alleged a "protected activity" for purposes of Title VII.[3] [4]

---

[3] The DOE contends that Parker's retaliation claim should be dismissed because she has "failed to present evidence" that her complaint to her supervisors respected race-based discrimination. However, the DOE is again confusing plaintiff's notice-pleading requirements with her burden of proof on summary judgment. Parker is not required to come forward with any *evidence* at this juncture and is instead only required to assert factual allegations regarding the various elements of her retaliation claim so as to give the DOC notice of her claim. As noted above, the issue at this point is not whether the plaintiff will ultimately prevail on her claims but whether she is entitled to offer evidence to support her claims.

Furthermore, although the DOE states in its supporting memorandum that plaintiff contends in her amended complaint that the grievances she voiced to her employer were "in the nature of personal complaints respecting her experiences with personal animus and 'discrimination' against her as an individual, rather than complaints targeting race-based animus or disparate treatment," the Court finds no such allegation within plaintiff's amended complaint. Instead, the Court finds that plaintiff explicitly alleges that she was "fired based upon her race and in retaliation for complaints about preferential treatment given to a white employee." This allegation does not indicate that Parker was simply complaining about a personal animus against her as an individual, it suggests that she was complaining about disparate treatment and discrimination in comparison to a white employee. Under the circumstances, the Court finds Parker's allegation sufficient to meet the standard discussed in *Harris-Childs*, *i.e.*, that plaintiff has alleged she complained about being "unfairly treated due to her race." If discovery ultimately reveals that such was not the nature of Parker's complaints to her supervisors, that issue will also be addressed through summary judgment.

[4] Additionally, to establish a prima facie case of retaliation based upon an employee's opposition to an employment practice made unlawful by Title VII, the employee need not prove that the employer's practices were *actually* unlawful, only that he *reasonably believed* that the employer was engaged in unlawful employment practices. *Byers v. Dallas Morning News, Inc.*, 109 F.3d 419 (5th Cir.

Finally, because, in Paragraph 39 of her amended complaint, Parker alleges that her termination was *based upon* her race and *in retaliation for* complaints about preferential treatment given to a white employee, the remaining causal element of her prima facie case of retaliatory discharge has been sufficiently alleged to survive the DOE's motion to dismiss.  In its motion, the DOE asserts that Parker will be unable to prove the causation element of her retaliation claim because the discharge did not follow the protected activity "so closely in time as to justify an inference of retaliatory motive."  Specifically, the DOE cites jurisprudence where courts have held that long intervals between the conduct that is said to motivate the employer and the adverse employment decision complained of, such as the four month period that elapsed between Parker's alleged complaints and her discharge, undermine the inference that the discharge was retaliatory.  However, the causal connection element of a prima facie case of retaliation need not necessarily be proven by the close temporal proximity of the protected activity and the retaliatory conduct.[5]  Where a close temporal proximity does not exist, the plaintiff may offer other evidence to establish causation.  *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001), citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390 (10th Cir. 1997)("Unless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation).

---

2000)(Emphasis added).  Thus, even if the "preferential treatment" about which Parker complained was not actually unlawful, she could nevertheless establish her prima facie retaliation claim if she proves that she "reasonably believed" that her supervisors were engaging in unlawful employment practices.

[5] The fact that an adverse action closely follows protected conduct may simply justify an inference of retaliatory motive.  *Marx v. Schnuck Markets*, 76 F.3d 324 (10th Cir. 1996), *cert. denied*, 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996).

For example, in *Marx v. Schnuck Markets*, the Tenth Circuit Court of Appeals determined that a plaintiff made a sufficient prima facie showing of causation to avoid summary judgment where he demonstrated that, shortly after he filed an FLSA complaint, a pattern of retaliatory conduct began that was apparently related to his FLSA conduct even though he was not finally terminated until much later. *Marx v. Schnuck Markets*, 76 F.3d 324 (10th Cir. 1996), *cert. denied*, 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996)(The temporal proximity analysis must not be applied too restrictively where a pattern of retaliatory conduct begins soon after the protected activity and only culminates later in actual discharge).  Similarly, taking plaintiff's allegations as true in the present case, Parker has sufficiently alleged a prima facie case of retaliation so as to avoid dismissal at this time, in that she has alleged that, after she expressed complaints to her supervisors, a pattern of retaliatory conduct began that was related to those complaints even though she was not finally terminated until four months later.[6]  If Parker is ultimately unable to prove such a causal connection after discovery is conducted in this case, the DOE will be permitted to reassert an argument for dismissal based upon a lack of causation at the summary judgment stage.

---

[6] *See also, Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir. 1984)(reversing a judgment for the defendant and remanding for further consideration of Title VII retaliation claim where discharge occurred nearly one and one-half years after complaint but pattern of retaliation allegedly began soon after complaint was filed); *Billue v. Praxair, Inc.,* 2007 WL 1231841 (D. Conn. 2007)(recognizing that a court may overlook a longer gap in time between protected conduct and an adverse employment action where "the pattern of retaliatory conduct beings soon after the filing of the [ ] complaint and only culminates later in actual discharge")

**RECOMMENDATION**

For the above reasons, it is recommended that the Motion to Dismiss Amended Complaint, or in the Alternative, Motion for More Definite Statement (R. Doc. 15) filed by defendant, the Louisiana Department of Education, Special School District, should be **DENIED**.

Signed in chambers in Baton Rouge, Louisiana, January 9, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**